20614

MARSHALL AND WILLIAMS COMPANY, Appellant, v. GEN-
ERAL FIBERS AND FABRICS, INC., Respondent.

(241 S. E. (2d) 888)

*Wyche, Burgess, Freeman & Parham,* of Greenville, *for Appellants,*

*Carter, Philpot, Johnson & Smith,* of Greenville, *for Respondent,*

February 21, 1978.

*Per Curiam:*

This action was commenced by the appellant, Marshall and Williams Company, hereinafter referred to as plaintiff, to recover the sum of $8,614.26 remaining due on the sale of a tenter oven to the respondent, General Fibers and Fabrics, Inc., hereinafter referred to as defendant. The total purchase price of the oven was $102,000.00. Defendant answered the complaint, and counterclaimed on the theory of breach of express warranty. In its counterclaim, defendant alleged that it had "relied on an express warranty by the Plaintiff that the subject machinery would process the Defendant's material as required at a capacity of 100 feet per minute." Defendant further alleged that as a result of the breach of warranty, it had suffered consequential damages in the amount of $69,921.68, "in the form of additional operating expenses from the commencement of operation of the machinery through June 1, 1976."

The jury returned a verdict in favor of the defendant on the counterclaim in the amount of $15,000.00, and found that plaintiff was in effect entitled to a $4,000.00 offset, leaving defendant with a net recovery of $11,000.00. Plaintiff appeals.

By appropriate exceptions, plaintiff contends, first, that the trial judge should have directed a verdict in its favor on the counterclaim. Secondly, it contends that if a jury issue existed, errors were committed by the judge in the conduct of the trial and a new trial should be granted.

Defendant is a manufacturer of carpet backing. It manufactures the product to which the pile of a carpet is attached. A tenter oven is used to heat-set the carpet backing, which is a process similar to sanforizing a shirt. This is a critical operation at the end of the manufacturing process, and the speed at which a tenter oven will process the carpet backing controls the entire operation of the factory. The basis of the counterclaim is that plaintiff expressly warranted that the tenter oven would process carpet backing at the rate of 100 feet per minute. Patrick Bova, chief executive officer and principal owner of defendant, testified that the tenter oven in question processed the backing at little more than half that speed, slowing down the entire factory operation.

In determining whether or not there was any evidence to go to the jury on the question of breach of express warranty, we must view the evidence in the light most favorable to defendant. We are not concerned with the quantity of the evidence, nor are we permitted to weigh the evidence. Our sole concern is whether there was any evidence from which the jury might conclude that there was an express warranty which was breached. We think that the testimony of Mr. Bova and the testimony of Melvin Kelly, taken as a whole, amply raised a jury question. Mr. Bova testified on direct examination as follows:

"Q. (By Mr. Johnson) What need did you specify to Marshall and Williams in regard to the capacity of this machine?

"A. Sir, I didn't understand the question.

"Q. What requirements did you specify in making the purchase from Marshall and Williams?

"A. First of all, I advised them what width I need of the machine, the machine had to be a certain width, two hundred ten inches. The next thing was the speed of the machine, how fast I must run in order to be able to completely balance my production that came out from the other machines.

"Q. What speed did you specify?
"A. A hundred feet a minute."

He testified further:

"Q. (By Mr. Johnson) What representation did they make?

"A. They have indicated to me that they have built a similar machine before and they are capable of delivering to me a machine capable of meeting this criteria that I have set forth."

Having concluded that the trial judge did not err in submitting the case to the jury, we proceed to consider the other exceptions, which urge that errors occurred requiring a new trial.

The trial judge, over the objection of counsel for plaintiff, submitted the counterclaim to the jury on the theory of both breach of express warranty and breach of implied warranty. We agree with plaintiff that such was error. At several places in the counterclaim, defendant denominates the action as one for breach of express warranty. No mention is made of an implied warranty, and a study of the counterclaim fails to reveal allegations which would place plaintiff on notice that defendant was seeking relief on the basis of an implied warranty. We agree with defendant that one does not have to denominate his pleading,

and if allegations appear in a complaint (or counterclaim) warranting relief, a verdict may be obtained without naming the cause of action. However, we are convinced that a breach of an implied warranty was not alleged. We therefore conclude that the trial judge erred in charging the law of implied warranty to the jury.

Plaintiff also argues that the trial judge erred in charging the jury as to the measure of damages. The trial judge charged that consequential damages were proper, and that "these could include lost profits[1], increased operating costs, and so forth, if it is established by the greater weight of the evidence as being a direct consequence of a breach of warranty." He further charged that such damages

"would be restricted to a period during which the parties are making a bona fide effort to comply with any warranty, that is, to adjust or correct the machine and so forth, if such was in fact attempted and it would terminate at such time as a person of ordinary reason and prudence, situated as the defendant was situated, to realize that such efforts to bring the machine in compliance would be unsuccessful."

The traditional measure of damages for breach of warranty is the difference in the value of the goods as accepted and the value they would have had if they had been as warranted. Our Commercial Code, Title 36, Code of Laws of South Carolina (1976), now declares the applicable law. Section 36-2-715, relating to "Buyer's incidental and consequential damages," was read to the jury. It states:

"(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expenses incident to the delay or other breach.

---

[1] In its brief, defendant admits that . . . "no claim was made by respondent [defendant] for loss of profits."

"(2) Consequential damages resulting from the seller's breach include

"(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

"(b) injury to person or property proximately resulting from any breach of warranty."

Whether the more liberal rule, as stated in the Code, was applicable under the facts is a close question. We are not prepared to say that the judge should have limited the measure of damages to the difference between the value of the product as accepted and the value it would have had if it had been as warranted. On a retrial, the judge can determine, based on the evidence, whether defendant is entitled to the benefit of the more liberal rule set out in the Code.

Plaintiff also alleges error on the part of the trial judge in refusing to admit in evidence a letter written by defendant to plaintiff about six weeks before the contract was entered. This letter set forth specifications for the tenter oven which was subsequently purchased. At a pretrial conference, held pursuant to a local standing order and Circuit Court Rule 43, the judge required the parties to submit their exhibits for identification. This letter was not submitted. When it was offered in evidence, the judge rejected it on the grounds that it had not been submitted at the pretrial conference or shown to counsel before trial. While it is true that a judge may be justified in excluding an exhibit because it was not submitted to the court at the pretrial conference, there are instances in which an exhibit should be admitted in evidence at the trial notwithstanding failure of counsel to produce it at the pretrial hearing. Here, plaintiff had submitted its case in chief and did not introduce the letter in evidence, which was its prerogative. While defendant was presenting its defense and counterclaim, Mr. Bova testified, at least arguably, contrary to the contents of

the letter he had written. It was not until that time that the letter became relevant. The letter then became admissible for the purpose of impeaching the witness. It is not likely that the question will arise again at the new trial, but we comment upon it because, conceivably, it could arise and our ruling may be helpful to the bench and bar in other cases.

If an exhibit bears directly on an issue raised by the pleadings, it is substantive in nature and should be revealed at the pretrial conference as directed by the judge and required by Rule 43. However, where an exhibit only becomes relevant because of prior testimony and does not bear on the issue raised by the pleadings, such exhibit may be used for impeachment and should be admitted notwithstanding the fact that it was not revealed at the pretrial conference. See *Middlebrooks v. Curtis Publishing Co.*, 413 F. (2d) 141 (4th Cir. 1949) ; *Bynon v. Morrison,* 169 Colo. 384, 456 P. (2d) 747 (1969) ; and *Hartstone Concrete Products Co., Inc. v. Ivancevich,* Fla. App., 200 So. (2d) 234 (1967).

When the pretrial conference was held and when the case was tried, Rule 43 did not specifically deal with failure of counsel to present an exhibit at the pretrial conference. On July 1, 1977, the rule was amended to provide: "Any exhibits not presented at pretrial will not be permitted into evidence. Failure to present at pretrial will constitute a waiver." The rule goes on to provide that the pretrial conference order ". . . when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." Under either rule, we think the letter was admissible since counsel could not reasonably have been expected to anticipate that the witness would testify contrary to the letter he had written. To exclude the letter under the circumstances would have been manifestly unjust under either rule.

In summary, we hold that the judge properly submitted the counterclaim to the jury and that a new trial must be

held. The trial errors prejudiced not only the defense of the counterclaim, but also the presentation of plaintiff's claim. Accordingly, a new trial will be held on all issues.

Reversed and remanded.